UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CLAY HOWARD,

    Petitioner,

v.                            CAUSE NO. 3:24-CV-624 DRL-SJF

WARDEN,

    Respondent.

OPINION AND ORDER

Clay Howard, by counsel, filed a habeas corpus petition under 28 U.S.C. § 2254 to challenge his conviction for murder under Case No. 48C01-1012-MR-893. Following a jury trial, on May 5, 2014, the Madison Circuit Court sentenced him to 65 years of incarceration.

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial:

> In April 2007, Howard was an inmate at the Pendleton Correctional Facility. On April 5, 2007, Howard was transferred into cell 103 in Building D, where inmates live two to a cell with individual doors on each cell. Howard's new cellmate was Kent McDonald, a convicted child molester.
>
> On the night of April 5, 2007, two inmates played dominos with McDonald and later heard McDonald and Howard arguing around 11:30 p.m. On the morning of April 6, 2007, a correctional officer doing a body count observed Howard on the top bunk and McDonald lying under the covers on the lower bunk with his legs sticking up at an unusual angle. Although McDonald had never previously missed a meal, he missed breakfast that morning. Two inmates later came to see if McDonald wanted to join them for lunch and talked with Howard, who was "shaking" and appeared

"afraid." Howard blocked the door so that they could not see into the cell and told them that McDonald was sleeping.

Shortly after noon on April 6, correctional officers found McDonald lying on the bottom bunk, with his legs still in the unusual position they had been in earlier that morning. McDonald's leg was cold to the touch, and when his blankets were removed, the officers discovered that he had a pillowcase tied around his head and observed a substantial amount of blood. He was not breathing, and medical personnel were unable to resuscitate him. Later, a pathologist conducting an autopsy observed that McDonald had multiple blunt force injuries to the head and neck, with evidence of asphyxiation.

In December 2010, the State charged Howard with McDonald's murder, alleging that Howard, "acting in concert with Paul M. Rayle, did knowingly kill" McDonald. Howard's jury trial took place from February 18 through 26, 2014.

* * *

During the trial, the State requested that the jury view the cell where the murder took place. The trial court allowed the jury to view the crime scene over Howard's objection, finding that it was "beneficial" to the jury to view the scene.

At trial, the State introduced a letter into evidence. The State alleged that approximately one year after McDonald's murder, a corrections officer screening outgoing mail observed a letter from Howard to his father. The screening officer placed the letter in a secured box for further review. The letter was later retrieved by a Department of Correction (DOC) investigator and sent to Indiana State Police officers. In relevant part, the letter stated as follows:

> I still go hunting. Just not your typical Game though. Tell Shane I Bagged and Tagged a [illegible]. It's got a gamey taste but a lot like Beef. They tried to get me on Poaching charges because the Son Bitch wasn't in season. The charges never stuck. That was 2 Birds w/one stone not only did he Play with kids, he Played with Boys so he was a F*g. How about that for earning some stripes. Thats something you can be Proud of. Throw this letter in the Fire Place or Burn it non-the less when your done reading it. Serious.

2

> Howard objected that the State had failed to establish a sufficient chain of custody to introduce the letter into evidence. The trial court overruled the objection and admitted the letter into evidence.
>
> At trial, inmate Toby Hicks testified that Howard admitted to him that he had discovered that his cellmate was a child molester and that he was ordered by the prison gang Aryan Brotherhood to "take care of it." Howard told Hicks that he was in the process of joining the gang at that time. According to Hicks, Howard said that he had attempted to extort money from McDonald and McDonald refused to pay, after which Howard and another gang member "beat him and tortured him and left him in his bed and went to chow." Howard stated that they "choked him out" until he passed out and then "put him on the bed and left him there."
>
> The State sought to enter pictures of Howard's Aryan Brotherhood tattoo into evidence. Howard objected because the photographs had not been disclosed to him prior to trial. The trial court granted the objection in part, denying the State's request to admit the photographs into evidence and instead ordering Howard to show his tattoo to the jury. The trial court reasoned that the State had laid a sufficient foundation by presenting Hicks's testimony regarding Howard's membership in the Aryan Brotherhood gang. A DOC investigator who monitors prison gang activity testified regarding gang activity in Indiana prisons and the Aryan Brotherhood tattoo, and then identified Howard's chest tattoo as an Aryan Brotherhood gang tattoo. The investigator also testified that the Aryan Brotherhood requires an act of violence to earn admission into the gang and that this particular gang is known for targeting and extorting child molesters.
>
> At the close of trial, the jury found Howard guilty as charged. On May 5, 2014, the trial court sentenced Howard to sixty-five years imprisonment.

*Howard v. State*, 29 N.E.3d 820 (Ind. Ct. App. 2015); ECF 9-6 at 2-5.

In the petition, Mr. Howard argues that he is entitled to habeas relief because the trial court erred by allowing the jury to view the scene of the crime at the Pendleton Correctional Facility and because trial counsel failed to request jury instructions for lesser-included offenses.

3

PROCEDURAL DEFAULT

The Warden argues that Howard has procedurally defaulted his claims. Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

A. *Viewing the Crime Scene.*

The court first considers whether the claim of trial court error is procedurally defaulted. The trial court held a conference on the prosecution's request to allow the jury to view the crime scene before jury selection. ECF 10-14 at 23-25. Trial counsel objected on numerous grounds, including redundancy with video and photograph exhibits, the

4

absence of a plan or procedure, the changes at the prison since the crime, and the risk that it would unfairly emphasize Mr. Howard's status as a prisoner. *Id.* The trial court took the matter under advisement for the purpose of observing some of the evidence to facilitate its determination on whether viewing the crime scene would aid the jury. *Id.* After the prosecution presented testimony from five witnesses, the trial court heard further argument on the prosecution's motion. ECF 10-15 at 17-25. Trial counsel objected on the bases that jurors are discouraged from personally conducting investigations and that viewing the crime scene would not materially aid the jury. *Id.* He also raised the risk of improper communications with other inmates or inappropriate questions by jurors, the disruption of normal prison activities, and the lack of clarity regarding how the scene view would proceed. *Id.* The trial court granted the prosecution's motion. *Id.*

On direct appeal, Mr. Howard argued, "A jury view of the prison is fundamentally prejudicial and unnecessarily marks the defendant as a dangerous character or suggests his guilt is a foregone conclusion in the same way that being tried in prison attire would." ECF 9-3 at 19. The Indiana Court of Appeals found that Mr. Howard had waived this objection by failing to raise it at trial. ECF 9-6 at 8-9. It further found that, if such an objection had been raised, it would have been appropriate to overrule it. *Id.* The court noted that the jury was informed of Mr. Howard's status as a prisoner throughout the trial given the nature of the charges and the evidence used to support them. *Id.* It also noted material differences between "the protections in place to ensure a defendant is not unfairly viewed as dangerous" and "shielding a jury from observed a crime scene that

5

happens to be a prison." *Id.* Mr. Howard presented the claim in a petition to transfer, but the Indiana Supreme Court denied it. ECF 9-2; ECF 9-7.

"[A] procedural default [bars] consideration of a federal claim on either direct or habeas review [when] the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). The Indiana Court of Appeals expressly found that Mr. Howard had waived his argument, and the Indiana Supreme Court did not disturb this finding, so it appears that this claim is procedurally defaulted.

Mr. Howard argues that his claim is not procedurally defaulted because the Indiana Court of Appeals issued a ruling on the merits. "A state court may reach the merits of a federal claim in an alternative holding; if it does so explicitly, then the independent and adequate state ground doctrine curtails reconsideration of the federal issue on federal habeas." *Moore v. Bryant*, 295 F.3d 771, 775 (7th Cir. 2002); *see also Bivens v. Rednour*, 428 F. Appx. 638, 641–42 (7th Cir. 2011); *McDonald v. Page*, 14 F. Appx. 651, 653 (7th Cir. 2001). "By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris*, 489 U.S. at 264 n.10. The Indiana Court of Appeals explicitly framed its ruling on the merits as a secondary alternative basis for denying relief. Therefore, the court finds that the scene-viewing claim remains procedurally defaulted.

Mr. Howard also offers the following argument as a basis to excuse procedural default:

6

> But if this Court [finds] that waiver applies, then it should find [that] cause exists. Trial Counsel provided detailed argument against the view even if he left out that part of the argument. And even then there was video and pictures of the scene available from the day in question. Taking the jurors to the scene simply formed them into a prison, an environment most had probably never known, surrounded by the sound and smell of inmates and the sights which only prejudiced Howard. The prejudice was overwhelming, and he stood no chance of ever getting a fair trial.

ECF 12 at 14.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Though his argument appears to be an assertion of the cause-and-prejudice excuse to procedural default, the factual basis of the argument does not fit squarely within the cause-and-prejudice framework. The only identifiable factor that could have prevented Mr. Howard from complying with the rule that an objection during trial be made to preserve the issue for appeal is trial counsel's failure to object during trial, but he phrases his argument as though trial counsel's performance was both sufficient and deficient.

Nevertheless, the court would not allow Mr. Howard to proceed on this claim even assuming that he intended to assert ineffective assistance of trial counsel as an excuse to procedural default. "Meritorious claims of ineffective assistance can excuse a procedural default." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). "But those claims must

themselves be preserved; [] to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, a petitioner is required to raise the claims through one full round of state court review, or face procedural default of those claims as well." *Id.* Because Mr. Howard did not properly present a claim regarding trial counsel's failure to object to the Indiana courts, it is procedurally defaulted. And, because this ineffective assistance claim is procedurally defaulted, it cannot serve to excuse the procedurally defaulted nature of his habeas claims about viewing the crime scene.

Consequently, Mr. Howard has not presented a valid excuse to procedural default in connection with his claim of trial court error. As a result, the court will not further consider the alleged trial court error as a basis for habeas relief.

B. *Jury Instructions on Lesser-Included Offenses.*

The court next considers the claim that trial counsel provided ineffective assistance by failing to request jury instructions on lesser-included offenses. On post-conviction review, Mr. Howard presented this claim to the Madison Circuit Court, who denied the petition based on the merits of claims as follows:

> To have pursued lesser included offenses or other alternative theories inconsistent with the defense's chosen trial strategy would have greatly undercut the defense's credibility. It would have been quite ineffective to have argued as [Mr. Howard] now suggests, "Defendant was not the man who caused the death. Furthermore, when he caused this death, it was an accident as he was only trying to commit a different crime against the victim."

ECF 9-10 at 34.

8

On post-conviction appeal, Mr. Howard presented this claim to the Indiana Court of Appeals, but the court found that Mr. Howard did not "support his arguments with cogent reasoning, citations to relevant authority, and/or citations to the record" as required by Ind. App. R. 46(A)(8)(a). ECF 9-12 at 7-8. The appellate court observed that he had "merely cite[d] to all thirty-seven pages of his petition for post-conviction relief in support of most of the arguments" and that "he did not cite to any part of the record of the evidentiary hearing held on his petition." *Id.* The appellate court concluded that Mr. Howard waived his arguments. *Id.* It further found that, notwithstanding the waiver, Mr. Howard did not demonstrate deficient performance or prejudice. *Id.* at 8-9. The appellate court relied on trial counsel's explanation that he did not believe the record contained sufficient evidence to support instructions on lesser included offenses. *Id.*

Review of the appellate brief reveals that Mr. Howard cited to only his post-conviction petition and related filings in connection with his lesser-included offense argument. ECF 9-10 at 20-23. His appellate brief did not include any citations to the jury instructions or evidence presented at trial and at the post-conviction hearing. *Id.* Mr. Howard's lack of compliance frustrated the purpose of Ind. App. R. 46(A)(8)(a), which is "to aid and expedite review and to relieve the appellate court of the burden of searching the record and briefing the case." *Wenner v. Hensley*, 224 N.E.3d 339, 344 (Ind. Ct. App. 2023). As a result, the court finds that this claim is procedurally defaulted. As with the claim of trial court error, the court similarly finds that this claim remains procedurally defaulted, though the appellate court ruled on the merits of the claim too.

Mr. Howard argues that the court should excuse this procedural default because he did not have counsel on post-conviction appeal. As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." *Maples v. Thomas,* 565 U.S. 266, 280 (2012); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."). The exception is that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Brown v. Brown*, 847 F.3d 502 (7th Cir. 2017).

According to *Martinez*, "inadequate assistance of counsel" includes both when post-conviction counsel renders ineffective assistance as defined by *Strickland v. Washington*, 466 U.S. 668 (1984), and when a post-conviction petitioner proceeds without counsel, *Martinez,* 566 U.S. at 9, 11-14. However, the *Martinez* exception "does not concern attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16 (emphasis added). Mr. Howard defaulted his ineffective assistance claim on post-conviction appeal rather than during his "initial-review collateral proceedings" before the Madison Circuit Court. As a result, he cannot assert lack of post-conviction counsel to excuse procedural default for this claim. Consequently, the court declines to further consider the claim that trial counsel erred by failing to request instructions on lesser-included offenses.

10

In sum, Mr. Howard's claims are procedurally defaulted, and he offers no valid basis to excuse procedural default. Therefore, the court denies the petition for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Mr. Howard to proceed further.

For these reasons, the court DENIES the habeas corpus petition (ECF 3); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED.

February 25, 2025    *s/ Damon R. Leichty*
                     Judge, United States District Court